1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES K. PRATER,

                Plaintiff,

    v.

STAPLES THE OFFICE
SUPERSTORE, LLC, et al.,

                Defendants.

CASE NO. C11-526 RAJ

ORDER DENYING DEFENDANT
NOVA PUBLISHING'S MOTION
FOR SUMMARY JUDGMENT

## I.      INTRODUCTION

This matter comes before the court on defendant Nova Publishing Corporation's ("Nova") motion for summary judgment for lack of personal jurisdiction. Dkt. # 32. Plaintiff James Prater and defendant R.R. Donnelley & Sons Company ("Donnelley") oppose Nova's motion. Defendant Staples the Office Superstore, LLC ("Staples") joins Donnelley's opposition. Dkt. # 40. Having considered the memoranda, exhibits, and the record herein, the court DENIES Nova's motion for summary judgment.[1]

_____

[1] This matter may be decided on the papers submitted. Accordingly, Nova's request for oral argument is DENIED.

## II. BACKGROUND

In 2009, plaintiff purchased a lien form package from a Staples retail store in Washington State.  Dkt. # 18 (Am. Compl.) ¶¶ 15, 18.  The lien form package stated that the lien form was valid in all states.  *Id.* ¶ 16.  Plaintiff recorded the lien in the amount of $218,000.  *Id.* ¶ 21.  When plaintiff attempted to foreclose the lien, he found out that it was invalid in Washington State.  *Id.* ¶¶ 24-25.  Nova authored the claim of lien form that Prater purchased.  Dkt. # 38 at 7:1-2 (Ex. A to Sipos Decl.).  In 2003, Nova entered into an exclusive licensing agreement (the "Agreement") [2] to allow Donnelley to manufacture, distribute, market and sell products derived from Nova's copyrighted works throughout the world.  Dkt. # 39 at 7 (Ex. A to Ballard Decl., Agreement ¶ 1.1).  Nova knew that Donnelley marketed and distributed claim forms nationwide, including Washington.  *Id.* ¶¶ 5, 7.  Pursuant to the Agreement, Nova was obligated to "continually monitor the content of the Legal Forms and [to] keep the Legal Forms current and legally correct throughout the term of th[e] Agreement."  *Id.* at 10 (Agreement ¶ 6).

Plaintiff filed suit against Staples, Nova and Donnelley.  Plaintiff alleges claims for breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligent misrepresentation, and violation of the Consumer Protection Act against all defendants. [3]

## III. ANALYSIS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a

---

[2] The licensing agreement is between Nova and Cardinal Brands, Inc. (as amended effected August 15, 2010), a predecessor to a company later absorbed by a wholly-owned subsidiary of Donnelley.  Dkt. # 39 (Ballard Decl.) ¶ 3.

[3] Plaintiff's first cause of action for breach of contract is only against Staples.

genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party will have the burden of proof at trial, it must affirmatively

demonstrate that no reasonable trier of fact could find other than for the moving party.

*Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  On an issue where the

nonmoving party will bear the burden of proof at trial, the moving party can prevail

merely by pointing out to the district court that there is an absence of evidence to support

the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets

the initial burden, the opposing party must set forth specific facts showing that there is a

genuine issue of fact for trial in order to defeat the motion.  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250 (1986).  The court must view the evidence in the light most

favorable to the nonmoving party and draw all reasonable inferences in that party's favor.

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

Plaintiff has the burden of establishing personal jurisdiction.  *Ziegler v. Indian*

*River County*, 64 F.3d 470, 473 (9th Cir. 1995).  "It is well established that where the

district court relies solely on affidavits and discovery materials, the plaintiff need only

establish a *prima facie* case of jurisdiction."  *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587

n.3 (9th Cir. 1993).  Washington's long-arm statute, RCW 4.28.185, "extends jurisdiction

to the limit of federal due process."  *Shute v. Carnival Cruise Lines*, 113 Wn. 2d 763,

771, 783 P.2d 78 (1989).  The due process clause grants the court jurisdiction over

defendants who have "certain minimum contacts . . . such that maintenance of the suit

does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945).  The court applies a three-part test to determine

whether the exercise of specific jurisdiction over a non-resident defendant is appropriate:

(1) the defendant has purposely availed itself of the forum, (2) the plaintiff's claims arise

out of the defendant's forum-related activities, and (3) exercise of jurisdiction is

reasonable.[4]  *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  Plaintiff bears the burden of satisfying the first two prongs.  *Id.*  The burden then shifts to defendant to make a "compelling case" that the exercise of jurisdiction would not be reasonable.  *Id.*

**A.    Purposeful Availment or Direction**

Courts often use the phrase "purposeful availment" to include both purposeful availment and purposeful direction.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  A purposeful availment analysis is most often used in suits sounding in contract.  *Id.*  Purposeful direction analysis is most often used in suits involving intentional torts.  *Id.*  To have purposely availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.  *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990).  The Ninth Circuit evaluates purposeful direction using the *Calder* effects test, which examines whether the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.  *Schwarzenegger*, 374 F.3d at 803 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).[5]

In internet website cases, the Ninth Circuit has adopted a sliding scale analysis that looks to how interactive an Internet website is for purposes of determining its jurisdictional effect.  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417-20 (9th Cir. 1997) (applying *Calder* effects test for purposeful direction); *see iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.*, Case No. 11-0592 CW, 2011 WL 6291793, *6 (N.D. Cal. 2011) (highly commercial nature of website sufficient to determine that defendants

---

[4] Plaintiff and Donnelley seem to concede that general jurisdiction does not exists.
[5] Plaintiff and Donnelley argue that Nova purposefully directed its efforts to Washington residents.  Dkt. # 35 (Pl.'s Opp'n) at 4-6; Dkt. # 37 (Donnelley Opp'n) at 8-9.  Donnelley also argues that purposeful availment is met here because of the licensing agreement between Nova and Donnelley.  Dkt. # 37 (Donnelley Opp'n) at 6-7).

purposefully availed themselves of the benefits of doing business in state). Interactive websites, on which business may be transacted and users may exchange information with the host computer, generally support the imposition of personal jurisdiction. *Id.* at 418. Passive websites, where a defendant has simply posted information and made it available to internet users, alone does not support the imposition of personal jurisdiction. *Id.* at 417-18.

Plaintiff argues that Nova's website (the "Website") is a commerce website that offers free shipping in the United States, personal account login access, and technical support to its customers. Dkt. # 35 (Pl.'s Opp'n) at 5; *see* www.novapublishing.com (New customer/log in; "1364021 requests since Friday 30 December 2005") (last visited on January 24, 2012). The Website also has received over 1.3 million requests.[6] *Id.* The Website also offers legal books, forms, kits and CDs for sale that provide state-specific instructions or legal materials. *See* www.novapublishing.com/catalog/index.php (materials regarding Business Start-Up, Divorce, Estate Planning, Legal Forms, Powers of Attorney and Real Estate include descriptions stating that the information is valid in all fifty states). The Website also states that over "500,000 Nova books and over 50 million Nova simplified legal and business forms are in print and in use on a daily basis throughout the United States." *Id.*

In contrast, Nova argues that the evidence demonstrates that (1) Nova never directly sold the subject lien form in Washington, (2) Nova does not target its business toward Washington, (3) Nova has never entered into a contract or transaction with any person or entity from Washington State, and 4) Nova has never visited Washington State for any commercial reason. Dkt. # 32 (Mot.) at 9 (citing Dkt. # 33 [Sitarz Decl.] ¶¶ 5-9).

---

[6] It is unclear to the court whether "requests" means requests for information, purchases, views of the website, or something else.

No evidence has been presented regarding whether Washington residents actually purchased any forms, kits or CDs from the Website.[7]  No evidence has been presented whether any of the 1.3 million "requests" were by Washington residents, how many hits the Website received from Washington residents, or whether any Washington residents have "log in" information.

However, Nova has provided evidence that it publishes legal and consumer books that are distributed and marketed by National Book Network, who handles all the sales, marketing, distribution, and shipping of the books.  Dkt. # 33 (Sitarz Decl.) ¶ 5.  Nova also provides legal content to Donnelley, who creates, publishes, markets, distributes, and sells various printed and software legal products developed from Nova's legal content. *Id.* ¶ 6.  Nova also provides legal content for FindLegalForms.com, who creates, publishes markets and sells electronic legal products developed from nova legal content via internet sales to the public.  *Id.* ¶ 7.  Nova claims that it has no direct knowledge or participation regarding where the legal products are advertised and sold.  *Id.* ¶¶ 5-7.  However, Nova supplies Donnelley with the legal content and instructions for legal forms pursuant to the terms of the Agreement.  Dkt. # 39 (Ballard Decl.) ¶ 3, Ex. A.  The Agreement grants Donnelley an

> exclusive license to use, copy, reproduce, enhance, modify, distribute, display, market and sell all written or other works . . . in order to allow [Donnelley] to manufacture, distribute, market and sell such self help legal forms, kits, CDs and floppy diskettes derived from such Copyrighted Works as [Donnelley] and Nova may agree (the "Legal Forms") throughout the world.

Dkt. # 39 at 7 (Ex. A to Ballard Decl., Agreement ¶ 1.1).  Nova also agreed that the license included "the right to use the Copyrighted Works not only in the Legal Forms, but

---

[7] The court notes that Nova has provided evidence that it has never "sold any book via its website to a customer from Washington State."  Dkt. # 33 (Sitarz Decl.) ¶ 8.  However, it appears that Nova offers more than just books for sale on the Website.

1 also in conjunction with promotional materials respecting the same, including general
2 advertising, website promotion, and the point-of purchase displays." *Id.* at 8. Nova
3 received a four percent royalty of net sales. *Id.* at 9 (¶ 3.1). Additionally, Nova was
4 obligated to "continually monitor the content of the Legal Forms and [to] keep the Legal
5 Forms current and legally correct throughout the term of th[e] Agreement." *Id.* at 10 (¶
6 6).

7 In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980), the
8 Supreme Court held that a forum state does not exceed its power under the Due Process
9 Clause if it asserts personal jurisdiction over a corporation that delivers its products into
10 the stream of commerce with the expectation that they will be purchased by consumers in
11 the forum state. The "foreseeability that is critical to due process analysis is not the mere
12 likelihood that a product will find its way into the forum State. Rather, it is that the
13 defendant's conduct and connection with the forum State are such that he should
14 reasonably anticipate being haled into court there." *Id.* at 297. The Supreme Court
15 concluded that "if the sale of a product of a manufacturer or distributor . . . is not simply
16 an isolated occurrence, but arises from the efforts of the manufacturer or distributor to
17 serve **directly or indirectly** the market for its product in other States, it is not
18 unreasonable to subject it to suit in one of those States if its allegedly defective
19 merchandise has there been the source of injury to its owners or to them." *Id.* (emphasis
20 added).

21 In *Asahi Metal Ind. Co., Ltd. v. Superior Court*, 480 U.S. 102 (1987), the Supreme
22 Court attempted to clarify the requirements of the stream of commerce theory. Four
23 Justices in the plurality opined that "[t]he placement of a product into the stream of
24 commerce, without more, is not an act of the defendant purposefully directed toward the
25 forum State." *Id.* at 112 (O'Connor, J.) (plurality op.). Four Justices opined that
26
27

1   "additional conduct" was not needed.  *Id.* at 117 (Brennan, White, Marshall, &

2   Blackmun, JJ., concurring in part and concurring in judgment).[8]  Although the Ninth

3   Circuit has not specifically adopted either view, case law indicates that some sort of

4   affirmative conduct is required on behalf of defendant.  *See Doe v. Am. Nat'l Red Cross*,

5   112 F.3d 1048, 1051 (9th Cir. 1997) ("purposeful availment requires that the defendant

6   engage in some form of affirmative conduct allowing or promoting the transaction of

7   business within the forum state.").

8         Examples of affirmative or additional conduct that "'may indicate an intent or

9   purpose to serve the market in the forum State' include marketing the product through a

10   distributor who has agreed to serve as the sales agent in the forum State, and designing

11   the product for the market in the forum State."  *Bou-Matic, L.L.C. v. Ollimac Dairy, Inc.*,

12   Case No. 05-0203 OWW SMS, 2006 WL 658602, *4 (E.D. Cal. 2006) (citing *Asahi*, 480

13   U.S. at 112-13 and *Tobin v. Astra Pharm. Prods., Inc.*, 993 F.2d 528, 544 (6th Cir. 1993)

14   ("something more" requirement of *Asahi* plurality satisfied where defendant sought and

15   obtained a distributor to market its product in each and every state).  *See also Beverly*

16   *Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 n.15 (presence of established

17   distribution channel is significant factor in cases involving stream of commerce theory).

18         Nova cannot expect to rely solely on the use of an independent distributor to

19   insulate it from suit.  *See Tobin*, 993 F.2d at 544.  Nova made a deliberate decision to

20   allow Donnelley to manufacture, distribute, market and sell Nova's products nationwide.

21   "Donnelley has communicated to Nova, consistent with the terms of the Agreement, that

22   the legal forms supplied by Nova to Donnelley are distributed and marketed nationwide,

23   including Washington State."[9]  Dkt. # 39 (Ballard Decl.) ¶¶ 5, 7.  "Nova has always

24   understood that Donnelley primarily sells Legal Forms to the three largest office retail

25

26        [8] Justice Stevens joined in the judgment of the Court, but did not join either of the conflicting opinions on the stream of commerce theory.

27        [9] This fact is in dispute, but the court resolves it in favor of plaintiff.

super stores with locations throughout the United States, including Staples." *Id.* ¶ 6.
"One of Nova's primary functions when monitoring legal content is to provide content
and instructions that is valid in all fifty states. Many forms include detailed, state by state
instructions as to how the consumer should complete or file the form."[10] *Id.* Nova
intentionally created a distribution channel, presumably for profit, to deliver its products
to all fifty states, including Washington. Accordingly, the evidence establishes a prima
facie case of purposeful availment.

**B.    "Arising out of"**

The arising out of requirement is met if "but for" the contacts between the
defendant and the forum state, the cause of action would not have arisen. *Doe*, 112 F.3d
at 1051.

Here, plaintiff alleges that he purchased a claim of lien form package at a Staples
retail store in Washington State based on the representation on the packet that it was valid
in all states. Dkt. # 18 (Am. Compl.) ¶¶ 15-18. Plaintiff recorded the lien in the amount
of $218,000 on the subject property. *Id.* ¶ 21. The claim of lien form that Prater
purchased was invalid in Washington State. *Id.* ¶ 25. Nova authored the claim of lien
form that Prater purchased. Dkt. # 38 at 7:1-2 (Ex. A to Sipos Decl.). Nova entered into
a licensing agreement that created a nationwide distribution channel, and Nova knew that
Donnelley marketed and distributed claim forms nationwide, including Washington. Dkt.
# 39 (Ballard Decl.) ¶¶ 5, 7. Pursuant to that Agreement, Nova promised to keep the
Legal Forms current and legally correct. Plaintiff would not have a claim against Nova
but for the allegedly defective claim of lien form that Nova intentionally put in the stream
of commerce knowing it would be distributed nationwide, including in Washington.

Accordingly, plaintiff has satisfied his burden on the second prong.

---

[10] This fact is also in dispute, but resolved in plaintiff's favor.

**C.     Reasonableness**

In determining whether it is reasonable to exercise specific jurisdiction, courts in the Ninth Circuit consider seven factors:  (1) the extent of a defendant's purposeful interjection into the forum, (2) the burden on the defendant in defending in the forum, (3) the extent of conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

With respect to the first factor, Nova established a nationwide distribution channel and authored products it knew would be distributed nationwide, including in Washington. Nova earned a four percent royalty on the sale of those products.[11]  This factor weighs in favor of exercising personal jurisdiction.

With respect to the second factor, Nova has actively participated in this litigation since May 2011 and has only identified two potential witnesses.  Nevertheless, it would be more burdensome for Nova to litigate in Washington rather than Illinois where it is located.  However, "[w]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004).  This factor weighs slightly against the exercise of personal jurisdiction.

With respect to the third factor, Nova concedes that this factor is neutral as there is no apparent conflict between sovereignty of Washington and Illinois.

With respect to the fourth factor, Washington has an interest in protecting the rights of its residents who allege tortious injury due to another's conduct. *See* RCW

---

[11] The court notes that Nova has not provided the court with information regarding royalties earned by Nova on the sale of products in Washington.

19.86; *Dantonio v. S.W. Educ. Developmental Lab.*, Case No. 10-1193RSL, 2011 WL
2118577, *7 (W.D. Wash. 2011).  This factor weighs in favor of exercising personal
jurisdiction.

The fifth factor focuses on the location of the evidence and witnesses.  *Panavision
Int'l*, 141 F.3d at 1323.  This factor "is no longer weighed heavily given the modern
advances in communication and transportation."  *Id.* at 1323-24.  Nova claims that the
vast majority of witnesses and documents are out of state in Illinois and Kansas.
However, Nova has only identified two potential witnesses.  Neither party has provided
the court with an understanding of the amount of evidence that would be used at trial, or
where that evidence is located.  Accordingly, this factor is probably neutral or in favor of
Nova.

The sixth factor slightly weighs in favor of exercising jurisdiction because plaintiff
chose to adjudicate his claim in Washington.  Litigating in one's home forum is most
convenient.  However, this factor is not of paramount importance.  *CE Distrib.*, 380 F.3d
at 1112.

With respect to the seventh factor, Illinois is an alternative forum.  This factor
weighs against the exercise of personal jurisdiction.

Balancing the factors, the court finds that defendant has failed to present a
"compelling case" that jurisdiction is unreasonable.

## IV. CONCLUSION

For all the foregoing reasons, the court DENIES Nova's motion for summary
judgment.  Dkt. # 32.

Dated this 6th day of February, 2012.

The Honorable Richard A. Jones
United States District Judge